<div align="center">

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

</div>

| | |
|---|---|
| **BRAD NELTON** | **CIVIL ACTION** |
| | **NO. 10-373** |
| **VERSUS** | |
| | **SECTION L** |
| | **JUDGE ELDON E. FALLON** |
| **CENAC TOWING COMPANY, L.L.C.** | |
| | **MAGISTRATE JUDGE** |
| | **SALLY SHUSHAN** |

<div align="center">

**DEFENDANT CENAC TOWING CO., L.L.C.'S
PRE-TRIAL MEMORANDUM OF FACT AND LAW**

</div>

**I.   MR. NELTON CANNOT PROVE A CAUSAL LINK EXISTS BETWEEN HIS INJURIES AND HIS ALLEGED WORK RELATED EVENT.**

Mr. Nelton cannot recover damages for both his Jones Act claim and his unseaworthiness claim against Cenac because he cannot prove the requisite causation for each claim. Mr. Nelton was involved in a severe motor-vehicle accident on April 26, 2008 (prior to his alleged injury with Cenac). Mr. Nelton was evacuated from the accident scene by ambulance on a spine board with cervical support. Mr. Nelton was subsequently evaluated at Terrebonne General Medical Center for back pain complaints. Following the accident, Mr. Nelton routinely complained to his wife, Susan LeBlanc, of arm, neck and shoulder pain; tingling in his hand; and increase in the size of his hand.

Mr. Nelton fully concealed the accident and related injuries from Cenac personnel even though he attended an annual company physical a month later on May 27, 2008. Mr. Nelton reported "no new developments" to physicians at Houma Family Practice.

In late March 2009, Mr. Nelton began discussing his arm and shoulder problems with his long time friend and captain, Frederick Sean Romero. Mr. Nelton insisted that he did not injure

himself on the job and that his problem was not work related. Captain Romero completed an Incident Report which outlined the situation and to confirm that Mr. Nelton stated that his arm and shoulder problems were not work related.

On April 10, 2009, Mr. Nelton underwent an MRI at Vantage Open MRI. Mr. Nelton indicated on his patient information form and to the staff technician, Tiffany Whitaker that the issue was not job related and he had not suffered an injury in his medical history. Following his MRI, Mr. Nelton visited neurosurgeon Jeffrey Nees on April 17, 2009. Again, Mr. Nelton stated on the patient questionnaire that he was not claiming his injury was related to an on-the-job injury.

It is fully apparent that in March 2009 Mr. Nelton was experiencing residual pain from his April 2008 motor-vehicle accident or he would not have told his Captain and medical providers that the pain he was experiencing was not job related. This is also evident by the fact that Mr. Nelton did not report his alleged March 23, 2009 on-the-job injury to Cenac personnel until April 13, 2009.

Mr. Nelton cannot provide evidence of causation in order to prove negligence on the part of Cenac. Despite the Jones Act's "featherweight" burden of proof standard, the seaman's claim must be supported by evidence which maintains a reasonable inference that the employer was negligent, and when the causal link between the alleged negligence and the injury is too speculative to draw a reasonable inference that the negligence played a part in the seaman's injury, dismissal of the seaman's Jones Act claim is necessary. *In re Copper/T.Smith*, 929 F.2d 1073 (5th Cir. 1991). By his own admissions, Mr. Nelton attributed his neck, shoulder, and hand pain to his April 2008 motor-vehicle accident. His effort to blame his injuries on an on-the-job

event is not supported by the evidence and does not lead a fact-finder to reasonably infer negligence on the part of Cenac.

Likewise, Mr. Nelton cannot demonstrate sufficient causation to recover damages for his unseaworthiness cause of action. "There is a more demanding standard of causation in an unseaworthiness claim than in a Jones Act negligence claim.  To establish the requisite proximate cause in an unseaworthiness claim, a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Johnson v. Offshore Exp., Inc.*, 845 F.2d 1347 (5th Cir. 1988).

The evidence is too speculative to prove that some unseaworthy condition of the M/V MARIE CENAC or her barges played a substantial part in causing Mr. Nelton's injuries.  Mr. Nelton, an experienced seaman, testified that there was nothing about the vessel or her barges, or her crew that contributed to his accident.  He admitted that there was nothing wrong with the nut and bolt assembly he was working on or the tools he was using to remove them.  Mr. Nelton cannot show an unseaworthy condition of the M/V MARIE CENAC or her barges was a reasonably probable cause of his injuries.

## II.     PURSUANT TO THE PRIMARY DUTY DOCTRINE, MR. NELTON CANNOT RECOVER UNDER THE MARITIME LAW OF UNSEAWORTHINESS.

The "primary duty doctrine," may be applicable to unseaworthiness claims filed within the Fifth Circuit.  *See Sanders v. Diamond Offshore Drilling, Inc.*, 2006 WL 2726492 (E.D.La. 2006); *Buckner v. State Boat Operators, Inc.*, 680 F.Supp. 239 (E.D.La. 1988).  Under the "primary duty doctrine, a seaman whose own breach of his duty to maintain a safe ship is the sole cause of his own injuries cannot recover damages for his injuries caused by such breach. *Walker v. Lykes Bros. S.S. Co.*, 193 F.2d 772 (2d Cir. 1952); *Peymann v. Perini Corp.*, 507 F.2d

1318 (1st Cir. 1974). A successful defense under the primary duty doctrine requires establishing (1) a primary duty owned by the plaintiff, (2) the plaintiff negligently breached that duty, (3) and the injury to the plaintiff was caused by that breach. *Peymann*, 507 F.2d at 1322.

In *Peyman*, plaintiff, seaman filed a claim for unseaworthiness alleging that he slipped and fell and injured his back while assembling a chain fall (a chain and pulley device) to raise the cylinder heads out of the vessel's engine. *Peymann*, 507 F.2d at 1320. Plaintiff was the engineer in charge of the engine overhaul at the time. *Id.* The plaintiff claimed that there was no ladder for him to stand on, there was oil on the rail he had to stand on, and he didn't have enough crewmembers available to assist him despite his requests for additional help. *Id.* The vessel owner defended the plaintiff's claim by arguing a ladder was available, that the plaintiff should not have stood on the rail or at least should have wiped it first, and it was not customary to have three men on the job at the time. *Id.* at 1321. The vessel owner also obtained an admission from the plaintiff that as chief engineer, it was his duty to obtain a stepladder if one was available, and also to maintain proper working conditions in the engine room. *Id.*

The First Circuit Court of Appeals approached the situation with the following methodology:

> If a vessel makes available two means for performing an act, one of which is unsafe, e.g., two tools, one of which is defective, or two ladders, one of which is slippery, it would be an indirect application of the proscribed doctrine of assumption of the risk to foreclose recovery completely if the seaman chose the less desirable alternative. But this does not mean that a seaman may not be wholly barred if he selects a method he could not reasonably think open to him. Thus if the cook were given a proper bottle opener but chose to knock the head off the bottle, he could not complain... So in the case at bar, if there was a ladder available which was the single means the engineer was supposed to use, as, indeed his own testimony suggested, it would not be proper to hold the vessel responsible to any degree if his decision not to use it was a free choice. The court made its [jury] charge particularly clear

4

> by conditioning nonliability upon a finding that plaintiff, as the person having full freedom of decision, was the sole cause of his accident. This is not a case where a lower echelon employee was offered defective means, so that both he and the ship may have been at fault.

*Id.* (additional citations omitted). The court concluded that such a negligent use by the seaman of an otherwise seaworthy vessel precludes relief. *Id.*

Likewise, at the time of his alleged event, Mr. Nelton was a knowledgeable and experienced deckhand/tankerman. Equipped with full understanding of how to approach the task at hand, Mr. Nelton had the primary duty to remove the nuts and bolts from the manifold blind in a safe manner. Mr. Nelton had full freedom of decision to select alternative methods of removing the nut, and these methods were each readily available to him.

Instead, Mr. Nelton negligently breached his duty by failing to place himself in the correct position to do the job. Mr. Nelton has testified that he was standing in the wrong position, and could have waited for the tankerman to step out of the way. Mr. Nelton also failed to obtain liquid wrench or a proper tool to assist him in easily removing the tight nut. Mr. Nelton failed to seek assistance from the tankerman, who was Mr. Nelton's coworker and the actual person-in-charge of the operation at the time. Mr. Nelton breached his duty to complete the task before him in a safe manner which subsequently led to the injuries he claims today. Accordingly, Cenac is relieved of liability for unseaworthiness.

### III. MR. NELTON'S CONTRIBUTORY NEGLIGENCE REDUCES HIS ABILITY TO RECOVER DAMAGES, IF ANY.

"[T]he Jones Act incorporates the doctrine of comparative negligence, under which recovery is reduced if the plaintiff is found to have been negligent and his negligence contributed to his injury. Such contributory negligence in a Jones Act case 'connotes some careless act or omission on the part of the employee over and above knowledgeable acceptance of a risk. The

defendant must show more than that the seaman simply had knowledge of a hazard; it must show that the seaman 'failed to adopt safer alternative courses of action,' and the inquiry at trial should thus 'center on what choices were available to the plaintiff and how he exercised those choices." *Ammar v. U.S.*, 342 F.3d 133, 137 (2d Cir. 2003); *Akermanis v. Sea-Land Service, Inc.*, 688 F.2d 898, 904 n. 2 (2d Cir. 1982). "Comparative negligence applies in both Jones Act and unseaworthiness actions, barring an injured party from recovering for the damages sustained as a result of his own fault. The defendant has the burden of proving that the plaintiff was contributorily negligent and that such negligence was the proximate cause in producing his injury." *Miles v. Melrose*, 882 F.2d 976, 984 (5th Cir. 1989).

The evidence at trial will easily demonstrate that Mr. Nelton was contributorily and/or comparatively at fault for his March 22, 2008 accident. Mr. Nelton had extensive experience as a deckhand and tankerman and was aware that there were a number of safer alternatives available to him for removing the nut. He could have used a lubricant to loosen the nut, obtained a more appropriate tool, awaited the opportunity to get in a better position to access the manifold, or asked for assistance. Instead, Mr. Nelton decided on his own to overexert himself and try to force the nut loose by utilizing an unsafe procedure. Mr. Nelton breached his obligation under the Jones Act to act with ordinary prudence under the circumstances; therefore, his contributory negligence should offset any damages he receives. *See Gautreaux*, 107 F.3d 331 (5th Cir. 1997).

### IV.     MR. NELTON EXPOSED HIMSELF TO RE-INJURY BY CONCEALING HIS APRIL 2008 MOTOR-VEHICLE ACCIDENT AND HIS DAMAGE RECOVERY, IF ANY, SHOULD BE REDUCED ACCORDINGLY.

"Where a seaman knowingly exposes himself to conditions of employment while aware of an illness or disability which makes those conditions unsafe to him, or where a seaman has the possibility of securing relief from unsafe conditions by informing his superiors of them, but

continues to work without doing so, he may be found to be contributorily negligent. *Savoie v. Otto Candies, Inc.*, 692 F.2d 363, 370 (5th Cir. 1982); *Johnson v. Cenac Towing, Inc.*, 599 F.Supp.2d 721 (E.D.La. 2009); *Ward v. Union barge Line Corp.*, 443 F.2d 565, 569 (3d Cir. 1971).

In *Savoie*, the plaintiff seaman fractured his leg in an automobile accident and he was unable to work for about nine months. *Savoie*, 692 F.2d at 364. He returned to work as a deckhand for the vessel owner on the same week that he had the metal rod used to support his leg following the accident surgically removed. *Id.* The plaintiff was told by his treating physician that he could return to work in six weeks and he was released to light duty. *Id.* The plaintiff presented his duty slip to the personnel office, but both light duty and regular duty were indicated. *Id.* After some brief miscommunication, the plaintiff was assigned the light duty job of cleaning duck blinds in the marsh. *Id.* The plaintiff refractured his leg while completing the task assigned.

In light of the facts presented upon appeal, the court in *Savoie* stated that "[a] seman has some duty to use reasonable care to protect himself even though that duty is slight." *Id. at 371*; *Bobb v. Modern Products, Inc.*, 648 F.2d 1051, 1056-57 (5th Cir. 1981). The court found that the plaintiff knew his physical condition was weak, but he persisted in cleaning the duck blinds in the muddy, uneven marsh. *Id.* The court upheld the jury's finding of contributory negligence on the party of the plaintiff because he knew "his own condition better than did Candies, but also knew, or should have known, that Candies was not fully informed in this regard, and that Savoie failed to even suggest to Candies any possible difficulty with his work assignment." *Id.*

Mr. Nelton intentionally concealed his April 26, 2008 motor-vehicle accident from Cenac. Thus, Cenac was not fully informed of Mr. Nelton's physical condition when he was

assigned the rigorous duties of a deckhand. Fully aware of his physical condition, Mr. Nelton exposed himself to possible re-injury or injury. Mr. Nelton complained extensively about the injuries he suffered in the motor-vehicle accident to his wife, Susan LBlanc, but failed to disclose the accident to Cenac's personnel or Cenac's physician(s) during his annual physical just one month later. Mr. Nelton even complained of pain in his shoulder and neck to his captain, Sean Romero, and told Captain Romero that his pain was not due to an on the job injury. As an experienced tankerman and deckhand, Mr. Nelton understood the physical demands of his job, but decided to expose himself to re-injury or injury nonetheless. Mr. Nelton should be found to be contributorily negligent.

## V. MR. NELTON FRAUDULENTLY CONCEALED HIS MOTOR-VEHICLE ACCIDENTS, THUS HIS ACTIONS REDUCE HIS RECOVERY HERE.

"It has been said that because of the unusual close relationship a shipowner bears to a seaman the latter owes him a high duty of good faith, particularly in the initiation of the employment." *Hazelton v. Luckenbach Steamship Co., Inc.*, 134 F. Supp. 525, 527 (Mass. 1955). Like other forms of equitable relief, fraudulent concealment applies to suits in admiralty. *Thorman v. American Seafoods Co.*, 421 F.3d 1090, 1094 (9th Cir. 2005). There are two elements that must be established to prove a claim of fraudulent concealment. The party asserting fraudulent concealment must prove: (1) the party charged with fault affirmatively misled the asserting party as to the operative facts that give rise to the claim; and (2) the asserting party had neither actual nor constructive knowledge of these operative facts despite its diligence in trying to uncover them. *Thorman*, 421 F.3d at 1095.

Mr. Nelton committed fraudulent concealment for failing to divulge his April 16, 2008 motor-vehicle accident. Mr. Nelton affirmatively misled Cenac as to the injuries he suffered as a result of the accident; he concealed the accident from Cenac personnel and from Cenac

8

physician(s) during his annual physical. Despite Cenac's diligence in trying to obtain information on Mr. Nelton's physical health and recent medical history by way of the annual physical, Cenac had neither actual nor constructive knowledge of either.

The *Hazelton* court stated that because of the "tenderness" which courts exhibit toward seaman, the defense of misconduct or fraud can only be effective if the seaman's misconduct or fraud was a direct and affirmative cause of the liability; the fraud must contribute to the loss. *Hazelton*, 134 F. Supp. at 528. Cenac implores this Court to find that Mr. Nelton's affirmative concealment of his April 16, 2008 motor-vehicle accident, an undoubtedly pre-existing medical condition, was the affirmative cause of his subsequent injury. Had he not fraudulently concealed his condition and refused to receive medical treatment for the injuries he suffered, he would not have been cleared to work until fully capable of doing so and appropriate treatment would have been rendered to assure he was physically fit for heavy duty tasks a deckhand must perform.

Mr. Nelton knowingly placed himself in danger by selfishly choosing to work in the maritime field with existing injuries and pain, both of which may have inhibited him from a safe work performance aboard Cenac's vessels. Therefore, as a result of the fraud committed by Mr. Nelton on Cenac, Mr. Nelton is contributory negligent.

Likewise, Cenac avers that Mr. Nelton is contributorily negligent because he fraudulently concealed his subsequent, September 29, 2009 motor-vehicle accident. Mr. Nelton was cleared to return to full duty just one week prior to this accident by his treating physician, Dr. Christopher Cenac, Jr. Cenac Towing was still paying Mr. Nelton two-thirds of his wages at the time. Mr. Nelton affirmatively concealed the circumstances of the September 29, 2009 motor-vehicle accident, the injuries he suffered as a result, and his inability to return to work, despite Cenac's requests to gather informaiton. Therefore, because Cenac was not informed, the

company continued to pay Mr. Nelton two-thirds of his wages until December and then maintenance and cure following under fraudulent assumptions orchestrated by Mr. Nelton. Cenac requests a set-off of any damages awarded to Mr. Nelton for their overpayment to Mr. Nelton.

## VI. CENAC DOES NOT OWE ADDITIONAL MAINTENANCE AND CURE TO MR. NELTON BECAUSE HE CONCEALED HIS APRIL 2008 MOTOR-VEHICLE ACCIDENT.

The amount of maintenance to which a seaman is entitled is a question of fact to be decided based upon the evidence presented to the trial court. *Springborn*, 767 F.2d at 94-95. Cenac avers that the Court should use its discretion here and deny Mr. Nelton maintenance and cure by applying the principles relative to the *McCorpen* defense. The seaman has a duty, under *McCorpen*, to disclose past injuries if asked. *Guillory v. Northbank Towing Corp.*, Civ. A. No. 92-0140, 1993 WL 721991 at *2 (W.D. La. June 25, 1993). In order to establish the denial of maintenance and cure benefits on the grounds of willful concealment, the employer must prove:

(a) Concealment of medical facts;

(b) Materiality to decision to hire; and

(c) Causal link between the concealed information and the injury complaint.

*McCorpen*, 396 F.2d at 559.

While the second prong of *McCorpen* requires the demonstration of the seaman's misrepresentation or concealment of material medical facts on a *pre-employment* examination, the rationale of the *McCorpen* defense may still be applied to the facts presented here. The intentional concealment element does not require a finding of subjective intent. *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 174 (5th Cir. 2005). "A seaman may be denied maintenance and cure for failure to disclose a medical condition only if he has been asked to

reveal it. Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information therefore satisfies the 'intentional concealment' requirement." *Id.*

Mr. Nelton was required to submit to an annual medical exam which is akin to the pre-employment exam all potential employees must attend prior to hiring by Cenac. Mr. Nelton knowingly concealed the injuries attributable to his severe April 26, 2008 motor-vehicle accident from Cenac office representatives and the annual physical medical examiners, even though he was asked to reveal all new medical issues during his annual physical examination. Had Cenac personnel been informed of his accident and related injuries, which should have been divulged by Mr. Nelton in his annual physical, Mr. Nelton would not have been released for full duty aboard Cenac's vessels until additional medical evaluation could have been conducted.

Like the pre-employment exam, the annual company physical assists Cenac personnel in determining if their vessel workers are fit for duty and is material to their decision to continue employing the worker. Cenac avers that Mr. Nelton's concealment of his injuries was material to their decision to keep him employed.

The causal connection element of the *McCorpen* defense is evident, Mr. Nelton suffered injuries to the same body parts, his neck and shoulder, in his motor-vehicle accident as he now claims he injured while working for Cenac. Mr. Nelton knowingly concealed his motor-vehicle accident and the injuries he suffered because of the accident from Cenac personnel and his annual physical examiner; therefore, the principles of the *McCorpen* defense are persuasive and it should be found that Mr. Nelton has forfeited his right to maintenance and cure.

Case 2:10-cv-00373-EEF-SS   Document 61   Filed 10/25/10   Page 12 of 13

## VII. MR. NELTON HAS REACHED MAXIMUM MEDICAL CURE; THEREFORE, CENAC'S MAINTENANCE AND CURE OBLIGATIONS HAVE BEEN FULFILLED.

It is well established that a vessel owner has no obligation to pay maintenance and cure after it is determined the seaman has reached a point of "maximum cure." *Rashidi v. American President Lines,* 96 F.3d 124, 128 (5th Cir. 1996); *Springborn v. American Commercial Barge Co.,* 767 F.2d 89, 95 (5th Cir. 1985). "The accepted legal standard holds that maximum cure is achieved when it appears probable that further treatment will result in no [b]etterment of the seaman's condition." *Pelotto v. L&N Towing Co. et al.*, 604 F.2d 396, 400 (5th Cir. 1979). "Thus, where it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering, but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved." *Id.*

From mid-April 2009 through the end of 2009, Cenac voluntarily paid Mr. Nelton two-thirds of his wages. Beginning December 15, 2009, Cenac suspended Mr. Nelton's wages and initiated maintenance payments to him at the rate of $35.00 per day.

On September 19, 2009, Mr. Nelton's physical therapist, Debora Horsch, discharged Mr. Nelton from her care after two months of physical therapy which had been prescribed by Dr. Christopher Cenac, Jr. Ms. Horsch determined that Mr. Nelton was experiencing significant increase in his range of motion and did not report pain. Accordingly, Cenac did not owe Mr. Nelton maintenance beyond September 19, 2009, and should be credited for the payments made to Mr. Nelton since that date.

Additionally, Cenac insists that Mr. Nelton reached the point of maximum medical improvement when Dr. Christopher Cenac, Jr. opined that Mr. Nelton could return to work at full

12

duty effective November 2, 2009; thus, in the alternative, Cenac should be credited for payments made to Mr. Nelton in maintenance and cure after November 2, 2009.

Respectfully submitted on October 25, 2010.

                              WAITS, EMMETT & POPP, L.L.C.

                              /s Jordan N. Teich
                              RANDOLPH J. WAITS (13157)
                              JOHN F. EMMETT (24608)
                              JORDAN N. TEICH (32254)
                              1515 Poydras Street, Suite 1950
                              New Orleans, Louisiana 70112
                              Telephone:   (504) 581-1301
                              Facsimile:    (504) 585-1796
                              Email:         jteich@wep-law.com

## **CERTIFICATE OF SERVICE**

I hereby certify that to the best of my knowledge all counsel of record consent to and participate in receiving electronic notification from the CM/ECF system, and that the Clerk of the Court for the Eastern District of Louisiana, using the CM/ECF system, will electronically send notification of the filing of this pleading to all counsel of record.

                              /s Jordan N. Teich
                              JORDAN N. TEICH